**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**ASHLEY L.,**

                                    **Plaintiff,**

        **vs.**                                                      **5:25-CV-809**
                                                                     **(MAD/MJK)**

**COMMISSIONER OF SOCIAL SECURITY,**

                                    **Defendant.**

---

**APPEARANCES:**                                    **OF COUNSEL:**

**JUSTIN GOLDSTEIN LAW, PLLC**              **JUSTIN M. GOLDSTEIN, ESQ.**
38 Pond Valley Circle
Penfield, New York 14526
Attorney for Plaintiff

**HILLER COMERFORD INJURY**               **IDA COMERFORD, ESQ.**
**& DISABILITY LAW**
6000 North Bailey Avenue, Suite 1a
Amherst, New York 14226
Attorney for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**        **FERGUS J. KAISER, ESQ.**
6401 Security Boulevard
Baltimore, Maryland 21235
Attorney for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## ORDER

Ashley L. ("Plaintiff") commenced this action on June 23, 2025, pursuant to 42 U.S.C. §

405(g). *See* Dkt. No. 1. Plaintiff seeks review of a decision by the Commissioner of Social

Security ("Defendant" or the "Commissioner") denying her application for Supplemental Security

Income benefits due to a lack of disability. *See id.* Both parties filed briefs, which the Court

treats as motions under Federal Rule of Civil Procedure 12(c), on the issue of whether the

1

Administrative Law Judge ("ALJ") properly evaluated the opinion of Dr. Matthew Grier, one of Plaintiff's physicians. *See* Dkt. Nos. 11, 13. In a Report-Recommendation dated March 18, 2026, Magistrate Judge Mitchell Katz recommended granting Plaintiff's motion and remanding the ALJ's decision for further administrative proceedings. *See* Dkt. No. 15. Magistrate Judge Katz found Plaintiff's motion "confusing," *id.* at 9, and construed it in two possible ways: (1) arguing that the ALJ committed "legal error" by improperly analyzing the medical opinions of Dr. Grier and two other physicians; or (2) arguing that substantial evidence did not support the ALJ's decision, *id.* at 10-28.

In reviewing a report-recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party properly objects to a magistrate judge's report-recommendation, the district court reviews *de novo* the issues raised in the objections. *See Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 358-59 (2d Cir. 2025) (citations omitted). When a party does not object, or do so properly, the court reviews the magistrate judge's recommendations for clear error. *See id.* at 359-60.

Because neither party objected to the Report-Recommendation, the Court reviews it for clear error. The Court finds no clear error in Magistrate Judge Katz's recommendation that the Court remand the proceedings for further administrative review.

The Court construes Plaintiff's counseled motion as arguing for remand based on the ALJ's improper evaluation of Dr. Grier's opinion. *See* Dkt. No. 11 at 11 (stating that "[r]emand is warranted for the ALJ's errors evaluating the opinion of Dr. Grier" and those errors "left the decision not supported [by] substantial evidence"). Although Magistrate Judge Katz also discussed in detail the opinions of Dr. M. Angelotti and Dr. M. Vazquez Gonzalez, *see* Dkt. No.

2

15 at 10-21, Plaintiff makes no arguments regarding those physicians, *see* Dkt. No. 11.  Rather, Plaintiff contends that the ALJ "relied on selectively chosen evidence" to inappropriately reject Dr. Grier's opinion as only "partially persuasive."  *Id.* at 11.  In addition, Plaintiff claims the ALJ improperly performed the analysis of whether Dr. Grier's opinion is supported by his treatment and examination of Plaintiff and consistent with the other evidence in the record.  *See id.* at 11-17.

Plaintiff's argument relies on the two most important factors in a five-factor analysis[1] that ALJs use to evaluate the persuasive value of medical opinions: supportability and consistency. *See Jennifer A. v. Comm'r of Soc. Sec.*, No. 1:22-CV-1167, 2023 WL 8654215, *4 (N.D.N.Y. Dec. 13, 2023) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, *1 (2d Cir. June 17, 2022) (summary order)).  "The regulations define the supportability factor as follows: '[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be.'"  *Id.* (quoting 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)).  "The consistency factor is defined as: '[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be.'"  *Id.* (quoting 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)).

Although an ALJ need not use the words "supportability" and "consistency" verbatim, *see id.* at *4-5, she is "specifically required to 'explain how [she] considered the supportability and consistency factors' for a medical opinion[,]" *Jessica L.M. v. Comm'r of Soc. Sec.*, No. 5:24-CV-403, 2025 WL 1994917, *5 (N.D.N.Y. June 9, 2025), *R. & R. adopted*, 2025 WL 1994646

---

[1] The other three factors are "relationship with the claimant," "specialization," and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 416.920c(c)(3)-(5).

(N.D.N.Y. July 17, 2025) (citations omitted).  Failure to provide such explanation is procedural

error, and unless the Court determines that the error was "harmless," remand is warranted.

*Loucks*, 2022 WL 2189293, at *2.  To decide whether an insufficient supportability and

consistency analysis is harmless, the Court must conduct "'a searching review of the record' [to

assure] 'that the substance of the [regulations] was not traversed.'"  *Id.* (quoting *Estrella v.

Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)).

Applying these standards, Magistrate Judge Katz found that the ALJ's "supportability and

consistency analyses of Dr[.] Grier's opinion [are] confusing."  Dkt. No. 15 at 18.  The ALJ

determined that Plaintiff's severe impairments are a "fracture with rod placement of the right leg,

fractures with metal plate of the right wrist and hand, peripheral neuropathy, traumatic brain

injury, migraine, post-traumatic stress disorder, depressive disorder and anxiety disorder."  Dkt.

No. 1-1 at 7.  Likewise, the ALJ found that Plaintiff

> has the residual functional capacity to perform sedentary work as
> defined in 20 C.F.R. 416.967(a) except she can lift and carry 10
> pounds occasionally and less than 10 pounds frequently, can sit
> with normal breaks for a total of 6 hours in an 8 hour workday, and
> can stand and/or walk with normal breaks for a total of 2 hours in
> an 8 hour workday.  She can never climb ladders, ropes, or
> scaffolds, occasionally climb ramps or stairs.  She can occasionally
> balance as defined by the Selected Characteristics of Occupations,
> occasionally stoop, kneel, or crouch, she should never crawl.  She
> should avoid exposure to hazards, such as unprotected heights and
> dangerous moving machinery.  She can understand, remember, and
> carry out simple instructions.  She can use judgment to make simple
> work-related decisions.  She should work in a job with occasional
> changes in the routine work setting.  She cannot perform work
> requiring a specific production rate or perform work which requires
> hourly quotas.  She could have occasional interaction with
> coworkers, supervisors, and the public.

*Id.* at 12.  Thereafter, the ALJ evaluated the opinions of Plaintiff's healthcare providers and

determined that Dr. Grier's opinion of Plaintiff's physical capabilities "is . . . somewhat

speculative . . . because the findings of Dr. Grier are consistent with the objective record in part."

*Id.* at 19.  Magistrate Judge Katz found this sentence nonsensical and "[could not] glean what the

ALJ meant."[2]  Dkt. No. 15 at 18.  The ALJ explained that Dr. Grier

> opined on [Plaintiff's] physical functioning, including among other
> things that [she] can lift and carry 50 pounds rarely, 20 pounds
> occasionally and 10 pounds frequently, can sit 6 hours in an 8 hour
> workday, can stand/walk less than 2 hours in an 8 hour workday,
> must use a cane to ambulate, can never climb ladders, can rarely
> crouch/squat, can occasionally climb stairs and stoop (bend), and
> will be absent from work 4 or more days a month, and the
> claimant's symptoms will interfere with attention and concentration
> occasionally.

Dkt. No. 1-1 at 19.  Putting aside the ALJ's unclear remark about Dr. Grier's opinion being

speculative, this summary reconciles with Dr. Grier's medical source statement, which is part of

the administrative record.  *See* Dkt. No. 8-8 at 638-40.

The ALJ appears to have conducted a haphazard consistency analysis and found that Dr.

Grier's opinion of Plaintiff's attention and concentration is "generally consistent" with the record.

Dkt. No. 1-1 at 19.  However, "[i]t is well-established that an ALJ may not generally assert that an

opinion is 'consistent with' or 'supported by' the record, without further elaboration." *Jessica*

*L.M.*, 2025 WL 1994917, at *11 (citations omitted).  The ALJ stated that "the record does contain

notations of deficits in concentration, including poor attention and decreased concentration[,]" and

cited two pages of other physicians' notes that briefly reference "decreased concentration" on

October 18, 2022, and "poor attention" on June 1, 2022.  Dkt. No. 1-1 at 19 (citing Dkt. No. 8-8 at

13, 91).  Although these notes indicate Plaintiff's decreased concentration and poor attention

---

[2] Magistrate Judge Katz also acknowledged the Commissioner's argument that the ALJ meant to
say Dr. Grier's findings were partially *inconsistent* with the record, *see* Dkt. No. 13 at 9, and
found that interpretation equally unclear, *see* Dkt. No. 15 at 18.

observed on those two days, *see* Dkt. No. 8-8 at 13, 91, the Court agrees with Magistrate Judge Katz that the ALJ's decision to reject greater cognitive limitations lacks critical elaboration.

As for Plaintiff's physical limitations, the ALJ found Dr. Grier's opinion "somewhat speculative" because of its partial consistency with the record. Dkt. No. 1-1 at 19. The ALJ stated that record evidence of Plaintiff's surgery after a serious motor vehicle crash "suggest[s] that greater limitations than those stated by Dr. Grier are warranted." *Id.* However, as Magistrate Judge Katz emphasized, the ALJ "never identifie[d] what is inconsistent—as she must." Dkt. No. 15 at 18-19 (citation omitted); *see also James W. v. Kijakazi*, No. 8:20-CV-954, 2022 WL 685288, *4 (N.D.N.Y. Mar. 8, 2022) (stating that an ALJ's failure to explain a lack of consistency "prevents meaningful review"). The closest the ALJ comes to identifying inconsistencies between the record and Dr. Grier's opinion is her assertion that the motor vehicle crash and subsequent surgery point to greater limitations than what Dr. Grier posited. Although the ALJ may disagree with Dr. Grier's opinion, "an ALJ may not substitute [her] own judgment for competent medical opinion[.]" *Nelson v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 361, 366 (W.D.N.Y. 2018) (citation and internal quotation marks omitted). Confusingly, as Magistrate Judge Katz pointed out, the ALJ used the motor vehicle crash to reject greater limitations at other times in her decision. Thus, the Court agrees with Magistrate Judge Katz that the ALJ's consistency analysis on this issue is inadequate.

In what appears to be a supportability analysis, the ALJ criticized the "check-the-box" format of Dr. Grier's medical source statement. Dkt. No. 1-1 at 19. According to the ALJ, Dr. Grier's opinion "is not supported by the record because the opinion consists of a 'check-the-box' for with [sic] only minimal explanatory narrative or citation to the objective record." *Id.* The Second Circuit has rejected the proposition that a "medical opinion can be discounted by an ALJ

6

based on the naked fact that it was provided in a check-box form." *Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir. 2022) (footnote omitted).  The inquiry is one of substance—rather than form— "and ultimately whether there is reasonable evidence in the record that supports the conclusions drawn by the medical expert[.]" *Id.* (citation omitted); *see Joseph S. v. Comm'r of Soc. Sec.*, No. 5:24-CV-1228, 2026 WL 775997, *4 (N.D.N.Y. Mar. 19, 2026) (citing *Schillo v. Kijakazi*, 31 F.4th 64, 77 (2d Cir. 2022); *Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004)).  The supportability factor also instructs an ALJ to consider a medical opinion's reliance on the author's own treatment record.  *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

Plaintiff argues that the ALJ failed to address "supporting evidence from Dr. Greir's [sic] records when evaluating the opinion[,]" such as notes of continuous "arm and ankle pain, migraines, dizziness, fatigue, short term memory deficits, irritability, anxiety, . . . sleep difficulty[,] . . . right lower extremity swelling, . . . reduced gait[,] . . . [and] bilateral edema[.]" Dkt. No. 11 at 15.  These notes are signed by Dr. Grier and part of the administrative record, and the Court finds that the ALJ failed to sufficiently account for them.  *See* Dkt. No. 8-9 at 567-68 (discussing abnormal gait, migraines, dizziness, arm and leg pain, memory problems, fatigue, difficulty sleeping, irritability, and anxiety), 572 (noting swelling and deformity in Plaintiff's right lower leg and bilateral edema in her lower extremities).  Defendant argues that the ALJ's determination was proper because Dr. Grier did not cite those notes in his medical source statement.  *See* Dkt. No. 13 at 9.  Magistrate Judge Katz rightly rejected that argument because it extends beyond what the regulations require.  *See Colgan*, 22 F.4th at 361 (citation omitted); *Joseph S.*, 2026 WL 775997, at *4 (citations omitted); *Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 30 (S.D.N.Y. 2022) ("To analyze supportability, the ALJ must conduct an inquiry confined to the medical source's own records that focuses on how well a medical source supported and explained

their opinion") (citation and internal quotation marks omitted); *cf. Karen P. v. Comm'r of Soc. Sec.*, No. 3:25-CV-81, 2026 WL 472444, *5 (N.D.N.Y. Feb. 19, 2026) (finding that an ALJ properly rejected a checkbox-based medical opinion because it was unsupported by the physician's own treatment notes). The ALJ had access to Dr. Grier's treatment notes as part of the administrative record, even though they were not explicitly cited in the medical source statement. Accordingly, the Court finds no clear error in Magistrate Judge Katz's conclusion that the ALJ did not appropriately analyze supportability when evaluating Dr. Grier's opinion.

Having identified significant shortcomings in the ALJ's consistency and supportability analyses, the Court next examines whether Magistrate Judge Katz correctly concluded that these shortcomings do not constitute harmless error. "[I]f the reviewing court can adequately glean how the ALJ [implicitly] weighed the consistency and supportability factors, remand is not justified because the procedural error is considered harmless." *Karen P.*, 2026 WL 472444, at *5 (citation and internal quotation marks omitted).

Magistrate Judge Katz determined that an inference of implicit analysis is unavailable and urged this Court to do the same. *See* Dkt. No. 15 at 20-21. He noted that the ALJ "rejected the findings of doctors who reviewed all the medical records and treated Ashley L.[,]" including Dr. Grier, "*only* because of the [motor vehicle] accident." *Id.* at 20. In other words, the ALJ's reliance on the motor vehicle crash to discount Dr. Grier's medical opinion does not support an inference that the ALJ implicitly weighed the supportability and consistency factors. As already explained, the ALJ referenced the motor vehicle crash to express disagreement with Dr. Grier's conclusion. According to the ALJ, the severity of the crash suggests Plaintiff may experience more pronounced limitations than what Dr. Grier articulated. *See* Dkt. No. 1-1 at 19. Not only is this reasoning strange, given the ALJ's determination that Plaintiff is *not* disabled, but as

8

discussed already, the ALJ may not substitute her own opinion for that of a competent medical provider.  *See Nelson*, 351 F. Supp. 3d at 366 (citation and internal quotation marks omitted). Because the ALJ attempted to substitute her own opinion for that of Plaintiff's physician, failed to identify purported inconsistencies between Dr. Grier's opinion and the record, and ignored evidence supporting Dr. Grier's opinion, the Court is inclined to agree with Magistrate Judge Katz that the ALJ committed reversible error.

Finally, even if an ALJ erroneously discounts a medical opinion, "remand is unnecessary [w]here application of the correct legal principles to the record could lead only to the same conclusion." *Jennifer A.*, 2023 WL 8654215, at *6 (citations and internal quotation marks omitted).  In other words, "[a]n ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case." *Navedo v. Kijakazi*, 616 F. Supp. 3d 332, 344 (S.D.N.Y. 2022) (citation and internal quotation marks omitted).

Plaintiff argues that if the ALJ had adopted Dr. Grier's opinion, "she would have found Plaintiff disabled." Dkt. No. 11 at 18.  Plaintiff points out Dr. Grier's conclusion, as summarized by the ALJ, that Plaintiff would "be absent from work 4 or more days a month, and [her] symptoms [would] interfere with attention and concentration occasionally." Dkt. No. 1-1 at 19; *see* Dkt. No. 11 at 18.  As defined in the medical source statement, "'occasionally' means 6% to 33% of an 8-hour working day." Dkt. No. 8-8 at 639.  Although the ALJ found this portion of Dr. Grier's opinion at least somewhat consistent with the record (but failed to explain why or engage in a proper supportability analysis), it is unclear whether her statement of Plaintiff's residual functional capacity accounts for attention and concentration deficits up to one-third of the time. *See* Dkt. No. 1-1 at 12 ("[Plaintiff] can understand, remember, and carry out simple instructions[,]

9

. . . use judgment to make simple work-related decisions[, and] . . . cannot perform work requiring a specific production rate or . . . hourly quotas").  Plaintiff emphasizes that the record contains hearing testimony from an impartial vocational expert, *see* Dkt. No. 11 at 18; Dkt. No. 8-2 at 37-55, who opined before the ALJ that competitive employment would be "rule[d] . . . out" for an individual who could only "maintain attention and concentration for simple tasks" two-thirds of the time.  Dkt. No. 8-2 at 53.  Although Defendant briefly argues that the stated residual functional capacity properly accounts for Plaintiff's cognitive limitations, *see* Dkt. No. 13 at 12, the Court is not convinced that the ALJ would have reached the same decision if she had properly considered Dr. Grier's opinion and applied all other standards correctly.

Having reviewed the Report-Recommendation, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Katz's Report-Recommendation (Dkt. No. 15) is **ADOPTED** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's motion (Dkt. No. 11) is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion (Dkt. No. 13) is **DENIED**; and the Court further

**ORDERS** that Defendant's decision denying Plaintiff benefits is **REVERSED and REMANDED pursuant to sentence four** of 42 U.S.C. § 405(g) for further proceedings; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Plaintiff's favor and close this case; and the Court further

      **ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  April 22, 2026
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

11